```
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re:                                                          Chapter 7

APCO Merchant Services, Inc.,                                   Case No. 8-14-73607-las

                        Debtor.
-------------------------------------------------------------X
Allan B. Mendelsohn as Trustee of the
Estate of APCO Merchant Services, Inc.,

                        Plaintiff,                              Adv. Pro. No. 8-15-8248-las

            -v-

Olga Kovalchuk,

                        Defendant.
-------------------------------------------------------------X
```

## MEMORANDUM DECISION AFTER TRIAL

Plaintiff Allan B. Mendelsohn, Esq., as chapter 7 trustee of the bankruptcy estate of APCO Merchant Services, Inc. ("debtor"), commenced this adversary proceeding against defendant Olga Kovalchuk seeking to avoid and recover seventeen prepetition transfers made by debtor to defendant in the aggregate amount of $56,658.85.[1] Specifically, plaintiff asserts actual and constructive fraudulent transfer causes of action under 11 U.S.C. §§ 544 and 550 and New York Debtor and Creditor Law §§ 273, 274, 275, 276, and 278.[2] Plaintiff also seeks to recover attorneys' fees from defendant pursuant to NYDCL § 276-a. In addition, plaintiff asserts an unjust enrichment claim against defendant for her receipt of the transfers.

---

[1] In their Joint Pretrial Statement [dkt. 40], the parties stipulated to reduce the amount sought to be recovered by plaintiff in this adversary proceeding to $41,544.63 arising from thirteen separate prepetition transfers from debtor to defendant during the period July 1, 2012 to December 27, 2012. *See also* Joint Letter dated October 6, 2016 filed by the parties [dkt. 37].

[2] All statutory references to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, will hereinafter be referred to as "§ (section number)." All statutory references to New York Debtor and Creditor Law will hereinafter be referred to as "NYDCL § (section number)".

The Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and the Standing Order of Reference entered by the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 157(a), dated August 28, 1986, as amended by Order dated December 5, 2012, effective *nunc pro tunc* as of June 23, 2011. This is a core proceeding under 28 U.S.C. § 157(b)(2)(H). The parties have consented to the entry of a final decision and judgment by the Court in their Joint Pretrial Statement [dkt. 40]. *See Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932 (2015).

The Court held a trial on May 8, 2017, observing the witness carefully, and has reviewed thoroughly the evidence presented. This decision constitutes the Court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, made applicable here by Bankruptcy Rule 7052. To the extent that a finding of fact includes a conclusion of law, it is deemed a conclusion of law and vice versa.

For the reasons set forth below, the Court concludes that plaintiff has failed to meet his burden with respect to each claim alleged in the amended complaint. Accordingly, the Court enters judgment for defendant.

I.  PROCEDURAL HISTORY

Plaintiff commenced this adversary proceeding on August 25, 2015, and filed an Amended Complaint on August 31, 2015 [dkt. 3]. The Amended Complaint alleges actual and constructive fraudulent conveyance claims against defendant pursuant to § 544(b) and the NYDCL[3] and a common law claim of unjust enrichment. Specifically, the Amended Complaint asserts eight causes of action: (1) constructive fraud under § 544(b) and NYDCL

---

[3] Although paragraph five of the Amended Complaint asserts that this action is brought under § 548 as well as under § 544(b) and the NYDCL, plaintiff has not plead a cause of action seeking recovery of the transfers as constructively fraudulent transfers pursuant to § 548(a)(1)(B) or as intentional fraudulent transfers pursuant to § 548(a)(1)(A). Thus, plaintiff's fraudulent conveyance action is based only on § 544(b) and the application of the NYDCL.

2

§§ 273, 274 and 275 (First and Third Causes of Action), (2) intentional fraud under § 544(b) and NYDCL § 276 (Fifth Cause of Action), (3) recovery of the transfers, once avoided, under § 550 and NYDCL § 278 (Second, Fourth and Sixth Causes of Action), (4) recovery of attorneys' fees under NYDCL § 276-a (Seventh Cause of Action), and (5) unjust enrichment (Eighth Cause of Action).

In anticipation of trial, the parties filed a Joint Pretrial Statement, which included the parties' agreement to reduce the amount sought to be recovered by plaintiff to $41,544.63 arising from thirteen separate transfers made by debtor to defendant during the period July 1, 2012 through December 27, 2012 (the "Transfers"). Additionally, for purposes of trial, the parties stipulated that debtor was insolvent at the time of the Transfers.

In the section of the Joint Pretrial Statement[4] titled "Plaintiff's Requested Relief," plaintiff asks that judgment be entered in his favor and against defendant under § 550 and NYDCL §§ 275, 276 and 278, and under a common law claim of unjust enrichment. At trial plaintiff did not argue or present evidence in support of his claim for recovery under NYDCL § 275 (First Cause of Action) and § 276 (Fifth Cause of Action). Nor did plaintiff put forth evidence to support his demand for attorneys' fees under NYDCL § 276-a (Seventh Cause of Action). Similarly, although the First Cause of Action seeks to avoid the Transfers under NYDCL § 274, at trial, plaintiff did not argue or present evidence in support of that claim.[5] Rather, at trial, plaintiff placed primary emphasis on his allegation that pursuant to § 544(b) and NYDCL § 273, the payments made by debtor to defendant, to wit, the Transfers, were constructive fraudulent conveyances because debtor did not receive fair consideration for the

---

[4] The pages of the Joint Pretrial Statement are not identified nor are there paragraph numbers. The sixth page contains the heading "Plaintiff's Requested Relief" and sets forth plaintiff's claims for recovery.

[5] The Second, Fourth and Sixth Causes of Action which seek recovery of the transfers, once avoided, do not mention NYDCL § 274.

3

payments and debtor was insolvent when it made the payments. Although not articulated as such at trial, the Court infers that this argument by plaintiff applies equally to his claim of unjust enrichment.

## II. FINDINGS OF FACT

The following findings of fact are based on the trial testimony provided by defendant—the only witness at trial—as well as the exhibits entered into evidence at trial.[6]

### A. The Transfers at Issue

During the period July 1, 2012 to December 27, 2012, debtor issued thirteen checks to defendant totaling $43,544.63[7] as follows: (1) Check No. 1071 dated July 1, 2012 in the amount of $6,000 [Ex. 5]; (2) Check No. 1180 dated August 2, 2012 in the amount of $1,126.81 [Ex. 6]; (3) Check No. 1185 dated July 30, 2012 in the amount of $2,046 [Ex. 6]; (4) Check No. 1233 dated August 16, 2012 in the amount of $6,371.82 [Ex. 7]; (5) Check No. 1040 dated September 1, 2012 in the amount of $3,000 [Ex. 8]; (6) Check No. 1136 dated September 29, 2012 in the amount of $3,001 [Ex. 9]; (7) Check No. 1137 dated September 29, 2012 in the amount of $2,999 [Ex. 10]; (8) Check No. 1335 dated October 22, 2012 in the amount of $1,000 [Ex. 11]; (9) Check No. 1229 November 2, 2012 in the amount of $5,000 [Ex. 12]; (10) Check No. 1380 dated November 21, 2012 in the amount of $1,000 [Ex. 13]; (11) Check No. 1417 dated November 30, 2012 in the amount of $5,000 [Ex. 14]; (12) Check No. 1433 dated December 21, 2012 in the amount of $1,000 [Ex. 15]; and (13) Check No. 1444 dated December 27, 2012 in the amount of $6,000 [Ex. 16].

---

[6] For convenience, the Court will refer to the trial transcript as "Tr." References to the trial exhibits, from the joint exhibit book, are designated as "Ex. ___".

[7] The 2012 transfers total $43,544.63. Yet, in the Joint Pretrial Statement, plaintiff limited his claim for recovery to $41,544.63. It is unclear as to whether the Joint Pretrial Statement and the parties' joint letter [dkt. 37] contained a typographical error or if $2,000 of the 2012 transfers was resolved by the parties.

The parties do not dispute that the Transfers were made. Tr. 1:13, 18-20. Defendant testified that, other than a check in the amount of $1,000 for a Christmas bonus [Ex. 15], Tr. 23:24-25, 24:2-6, the payments received by her from debtor in 2012 were for services rendered to debtor. Tr. 67:9-16.

B.  Defendant's Work History and Relationship with Debtor

In 2006, at the age of 17, defendant started working for debtor, a merchant processing services company, after answering a Craigslist advertisement. Tr. 3:20-24, 4:3-8, 50:12-17, 51:12-13, 56:3-5. Defendant contacted potential customers by phone, prepared proposals, answered customer inquiries and provided general customer service. Tr. 55:11-16, 51:5-7, 55:14-56:2. Defendant was compensated as an independent commission-based salesperson, not a salaried employee of debtor. Tr. 71:13-16. She received a draw against commissions of $6,000 per month. Tr. 4:9-22. Defendant did not have a written contract with debtor setting forth the terms of her engagement. Tr. 9:17-22. Rather, according to defendant, per a verbal agreement with debtor, defendant was entitled to a 50% commission on each account she successfully solicited for debtor. Tr. 8:21-9:2. Defendant testified that during 2012, she generated 1,200 merchant accounts for debtor. Tr. 8:8-9, 43:14-16. These accounts, according to defendant, generated income to debtor in excess of $600,000. Tr. 64:7-15, 65:12-13. Defendant testified that she did not receive commissions due for the accounts generated by her for debtor in 2012. Tr. 66:17-24.

In October 2010, defendant, with the help of debtor's principal and accountant, Svetlana Shneydershteyn ("Shneydershteyn"), formed Merchant Marketing Group ("MMG"). Tr. 56:6-10, 5:23-6:20. Defendant's 2012 and 2013 federal tax returns each included Schedule C – Profit or Loss From Business (Sole Proprietorship) and Schedule SE – Self-Employment Tax, and her 2012 and 2013 state tax return included a copy of Schedule C that was filed with defendant's federal tax returns [Exs. 21 and 22]. According to defendant, in 2012, MMG

5

had gross receipts of $18,000. Tr. 31:12-18; Schedule C – Profit or Loss From Business (Sole Proprietorship) [Ex. 21].

Shneydershteyn issued checks on behalf of debtor payable to defendant, individually, and MMG. Tr. 5:16-6:2. Shneydershteyn decided how and when the checks were payable and in what amounts they were made. Tr. 6:23-7:7. Shneydershteyn, on behalf of debtor, also issued 1099 forms to defendant.[8] Tr. 29:13-17. In 2013, defendant noticed incorrect calculations on certain residual reports provided to her by debtor. Tr. 42:21-43:7. After she approached Shneydershteyn regarding the incorrect calculations, defendant received a letter terminating her relationship with debtor. Tr. 43:4-7.

Defendant testified that she is still owed unpaid commissions for work performed from 2010 through 2013. Tr. 42:12-14. On December 4, 2014, defendant filed a proof of claim in debtor's chapter 7 case for unpaid commissions totaling $2,170,000 [Proof of Claim No. 7-1, Ex. 1].

III.  DISCUSSION

As noted above, plaintiff seeks to recover the Transfers as constructive fraudulent transfers pursuant to § 544(b) and NYDCL §§ 273-275. In the alternative, plaintiff seeks to recover the Transfers as intentional fraudulent transfers pursuant to § 544(b) and NYDCL § 276, and demands attorneys' fees under NYDCL § 276-a. Finally, plaintiff asserts a common law claim of unjust enrichment. The Court first considers the legal principles applicable to an action under § 544(b) and the NYDCL. The Court will then discuss each cause of action in turn.

---

[8] Defendant testified that Shneydershteyn filed tax returns for MMG. Tr. 32:17-18, 34:13-17. She is not an accountant, and appeared to be confused over the issue of whether tax returns were filed for MMG. Neither party, however, produced any corporate tax returns, not did the parties introduce any evidence of MMG's corporate form, other than Schedule C to defendant's personal federal tax returns. The only evidence introduced at trial reflects that MMG is a sole proprietorship. Additionally, plaintiff's counsel referred to MMG as a sole proprietorship when questioning defendant. Tr. 31: 12-14.

A. 11 U.S.C. § 544(b)

Section 544(b)(1) authorizes a trustee to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim." 11 U.S.C. § 544(b)(1). Hence, under § 544(b), the trustee may avoid a transfer of an interest of the debtor or an obligation incurred by the debtor that is voidable under applicable nonbankruptcy law. The parties do not dispute that in this action the "applicable law" for purposes of § 544(b) is the NYDCL, and that the action was timely commenced under § 546(a).[9] "[A]s long as the statute of limitations has not expired as of the petition date, a trustee is permitted to bring New York fraudulent conveyance actions looking back six years from the [petition date] in accordance with section 544(b) at *any* point during the two-year period set out in section 546(a)." *Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 454 B.R. 317, 337 (Bankr. S.D.N.Y. 2011). Pursuant to § 550(a), "to the extent that a transfer is avoided under section 544 . . . the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from . . . (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made." 11 U.S.C. § 550(a).

The power given to a trustee under § 544(b) to avoid a transfer or obligation is derivative, that is, there must be an actual existing creditor holding an allowable unsecured claim who would have had that right outside of bankruptcy. "In order for a trustee to maintain an action for avoidance of a fraudulent conveyance, the trustee must show that at least one of the present unsecured creditors of the estate holds an allowable claim, against

---

[9] Section 546(a) provides in relevant part that "[a]n action or proceeding under section 544 . . . of this title may not be commenced after the earlier of – . . . (1) the later of – (A) 2 years after the entry of the order for relief; or (B) 1 year after the appointment or election of the first trustee . . . or (2) the time the case is closed or dismissed." 11 U.S.C. § 546(a).

7

whom the transfer or obligation was invalid under applicable state or federal law." *Young v. Paramount Commc'ns Inc. (In re Wingspread Corp.)*, 178 B.R. 938, 945 (Bankr. S.D.N.Y. 1995).[10]  *See also MC Asset Recovery, LLC v. S. Co.*, No. 1:06-CV-0417-BBM, 2006 WL 5112612, at *3 (N.D. Ga. Dec. 11, 2006) ("[I]n order to maintain an avoidance action under § 544(b), a trustee must demonstrate the existence of a so-called 'golden or 'triggering' creditor: (1) an unsecured creditor, (2) who holds an allowable unsecured claim under section 502, and (3) who could avoid the transfers at issue under applicable (i.e., state) law."); *In re Archdiocese of Milwaukee*, 483 B.R. 855, 862-63 (Bankr. E.D. Wis. 2012) ("The trustee's rights under § 544(b) are limited to the 'rights of an existing unsecured creditor because § 544(b) rights are completely derivative of those of an actual unsecured creditor.'") (quoting *Lippe v. Bairnco Corp.*, 225 B.R. 846, 852 (S.D.N.Y. 1998)).  Further, the trustee will be able to attack the transfer only to the extent a creditor with an allowable claim can avoid the transfer under applicable state law.") (internal citations omitted); *Rafool v. Propack Sys., LLC (In re Fleming Packaging Corp.)*, No. 05-8124, 2007 WL 1021884, at *9 (Bankr. C.D. Ill. Mar. 30, 2007) ("When bringing an avoidance action under Section 544(b) . . . the extent of the trustee's rights is determined entirely by state law."); *Schaps v. Bally's Park Place, Inc.*, 58 B.R. 581, 584 (E.D. Pa. 1986) ("[A] prerequisite to a Section 544(b) suit is the existence of an actual creditor holding an unsecured claim who could have avoided the transfer under state law."), *aff'd*, 815 F.2d 693 (3d Cir. 1987); 5 COLLIER ON BANKRUPTCY ¶ 544.06(1) (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014) ("If there are no creditors against whom the transfer

---

[10] The court in *Geron v. Schulman (In re Manshul Constr. Corp.)*, No. 96B44080 (JHG), 2000 WL 1228866, (S.D.N.Y. Aug. 30, 2000) observed that "[c]ourts disagree as to whether a trustee is required to establish the existence of a specific creditor in order to have standing under Section 554(b)." *Id.* at *44. There, the court compared *Young* (trustee must name actual creditor) with *In re Leonard*, 125 F. 3d 543 (7th Cir. 1997) (trustee need not articulate specific creditor). However, the court determined that it was not necessary to resolve the issue because the evidence at trial established that there were unsecured creditors of the debtor at the time of the transfers, and those creditors could have avoided the transfers at issue under state fraudulent conveyance law. *Id.* at *44-45.

is voidable under the applicable law, the trustee is powerless to act under section 544(b)(1)."). Because a trustee must stand in the shoes of an actual creditor, the trustee is subject to the same defenses a transferee would have in a state fraudulent conveyance action brought by the actual creditor. *Smith v. Am. Founders Fin., Corp.*, 365 B.R. 647, 658-59 (S.D. Tex. 2007); *see Davis v Willey*, 263 F. 588, 589 (N.D. Cal. 1920), *aff'd*, 273 F. 397 (9th Cir. 1921).

Although defendant did not raise the issue of plaintiff's standing to bring this action, "[t]he Court is obligated to raise an issue implicating standing *sua sponte*, even if the parties fail to raise it, because it implicates the Court's subject matter jurisdiction." *Densmore v. Litton Loan Servicing, L.P. (In re Densmore)*, 445 B.R. 307, 312 (Bankr. D. Vt. 2011); *see Thompson v. Cty. of Franklin*, 15 F.3d 245, 248 (2d Cir. 1994)); *see Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 117 (2d Cir. 1991) (standing "is a threshold issue in all cases since putative plaintiffs lacking standing are not entitled to have their claims litigated in federal court."). The burden is on plaintiff to show that he has standing under § 544(b) to bring this action. *Young*, 178 B.R. at 945; *see also Silverman v. Sound Around, Inc. (In re Allou Distribs., Inc.)*, 392 B.R. 24, 31 (Bankr. E.D.N.Y. 2008).

Here, plaintiff did not identify the qualifying creditor in his Amended Complaint,[11] nor did he prove the existence of an actual, qualifying creditor at trial.[12] Because the power

---

[11] At the motion to dismiss stage, Courts have found that a § 544(b)(1) cause of action survives even if the trustee does not identify, in the complaint, a specific creditor holding an allowable unsecured claim at the time of the transfer and the filing of the complaint. *Picard v. Estate of Stanley Chais (In re Bernard L. Madoff Inv. Sec. LLC)*, 445 B.R. 206 (Bankr. S.D.N.Y. 2011); *Musicland Holding Corp. v. Best Buy Co. (In re Musicland Holding Corp.)*, 398 B.R. 761, 780 (Bankr. S.D.N.Y. 2008). However, a trustee "must at least provide facts from which it can be plausibly concluded that there is at least one legitimate creditor of the estate." *In re Refco, Inc. Sec. Litig.*, No. 07 MDL 1902 GEL, 2009 WL 7242548, at *10 (Bankr. S.D.N.Y. Nov. 13, 2009) (report of special master), *report and recommendation adopted sub nom. In re Refco Sec. Litig.*, No. 07 MDL 1902 (JSR), 2010 WL 5129072 (S.D.N.Y. Jan. 12, 2010). *See also In re RCM Global Long Term Capital Appreciation Fund, Ltd.*, 200 B.R. 514, 524 (Bankr. S.D.N.Y. 1996) (finding that plaintiff could survive a motion to dismiss by pleading, generally, the existence of a triggering creditor and may provide proof of such creditor's existence later in the case).

[12] Even if plaintiff plead the existence of an unsecured creditor generally for purposes of Federal Rule of Procedure 8(a), *see In re RCM Global*, 200 B.R. at 523-24 (pleading the existence of an unsecured creditor with an allowable claim is sufficient), he nevertheless must prove the existence of the actual creditor on whose rights he is depending at trial, *In re Musicland*, 398 B.R. at 780 ("Thus, *RCM* supports the proposition that the

9

given to a trustee under § 544(b) permits the trustee to stand in the shoes and assert the rights of an actual, existing creditor holding an allowable unsecured claim, proof of the existence of a creditor who could have avoided the Transfers under the NYDCL is central to plaintiff's actual and constructive fraudulent conveyance causes of action under § 544(b) and NYDCL §§ 273-276 and 278. *See Young*, 178 B.R. at 946 ("'[B]efore a trustee is able to utilize applicable state or federal law referred to in Section 544(b), there must be an allegation and ultimately a proof of the existence of at least one unsecured creditor of the Debtor who at the time the transfer occurred could have, under applicable local law, attacked and set aside the transfer under consideration.'") (quoting *Smith v. Shoemaker (In re Smith)*, 120 B.R. 588, 590 (Bankr. M.D. Fla. 1990)). Plaintiff has not satisfied this requirement. Accordingly, the Court finds that plaintiff has failed to present evidence sufficient to establish standing to bring this action under state fraudulent conveyance law against defendant.

Although the Court concludes that plaintiff has failed to identify the actual unsecured creditor on whose rights he is depending, for the sake of completeness, the Court will address plaintiff's claims to avoid and recover the Transfers based on actual and constructive fraud under § 544(b) and the NYDCL. The Court will then address plaintiff's remaining claim for recovery based on unjust enrichment.

For the reasons that follow, even if plaintiff had established the existence of the "golden" or "triggering" creditor under § 544(b), plaintiff has not met his burden of proof on the elements of actual and constructive fraud. Additionally, as discussed below, plaintiff has failed to prove that defendant was unjustly enriched by the payments made by debtor to defendant.

---

plaintiff may plead the existence of the qualifying creditor generally, and prove the existence of an actual, qualifying creditor at trial.").

B. Plaintiff's Constructive Fraudulent Conveyance Claim

1. Burden of Proof

Plaintiff has the burden of proof to present evidence in support of his allegations that the Transfers may be avoided as constructively fraudulent and to prove those allegations by a preponderance of the evidence. *Kramer v. Chin (In re Chin)*, 492 B.R. 117, 126 (Bankr. E.D.N.Y. 2013); *Togut v. RBC Dain Correspondent Servs. (In re S.W. Bach & Co.)*, 435 B.R. 866, 875 (Bankr. S.D.N.Y. 2010). "'The burden of showing something by a preponderance of the evidence . . . simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence . . . .'" *Metro Stevedore Co. v. Rambo*, 521 U.S. 121, 137, n.9 (1997) (quoting *Concrete Pipe and Prods. of Cal., Inc. v Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 622 (1993). "As the finder of fact, the Court is entitled to make credibility findings of the witnesses and testimony." *Merck Eprova AG v. Gnosis S.P.A.*, 901 F. Supp. 2d 436, 448 (S.D.N.Y. 2012), *aff'd*, 760 F.3d 247 (2d Cir. 2014).

2. Analysis

A conveyance by a debtor may be avoided as constructively fraudulent if made without fair consideration under NYDCL § 272 and one of the following additional elements has been established: (i) the debtor was insolvent or was rendered insolvent as a result of the transfer, NYDCL § 273; (ii) the debtor was left with unreasonably small capital, NYDCL § 274; or (iii) the debtor intended or believed it would incur debts beyond its ability to pay such debts as they matured, NYDCL § 275. *See Sharp Int'l Corp. v. State Street Bank and Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 53-54 (2d Cir. 2005); *Liberty Mutual Ins. Co. v. Horizon Bus Co., Inc.*, No. CV 10–0449(JS)(WDW), 2011 WL 1131098, at *5 (E.D.N.Y. Feb. 22, 2011). Under NYDCL §§ 273-275, "'a transfer made without fair consideration constitutes a

fraudulent conveyance, regardless of the intent of the transferor.'" *Sharp*, 403 F.3d at 53 (quoting *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 633 (2d Cir. 1995).

At trial, plaintiff did not put forth evidence to show that debtor was undercapitalized or that debtor intended or believed that it would incur debts beyond its ability to pay when the debts matured. Rather, as noted above, for purposes of trial, the parties agreed that debtor was insolvent at the time the Transfers were made. Accordingly, the Court need not and does not reach the issue of whether the Transfers may be avoided under NYDCL §§ 274 and 275, and the following discussion is limited to plaintiff's argument that he may recover the Transfers as constructively fraudulent under NYDCL § 273.

Section 273 provides that "[e]very conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration." N.Y. DEBT. & CRED. § 273. "Fair consideration" is defined in NYDCL § 272, which provides, in part, that: "[f]air consideration is given for property . . . [w]hen in exchange for such property . . . as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied." N.Y. DEBT. & CRED. § 272. In discussing the fair consideration test, the Second Circuit explained that "[t]he fair consideration test 'is profitably analyzed as follows: (1) . . . the recipient of the debtor's property[] must either (a) convey property in exchange or (b) discharge an antecedent debt in exchange; and (2) such exchange must be the 'fair equivalent' of the property received; and (3) such exchange must be 'in good faith.'" *Sharp*, 403 F.3d at 53-54 (quoting *HBE Leasing Corp. v. Frank*, 61 F.3d 1054, 1058-59 (2d Cir. 1995)). Fair consideration under NYDCL requires both an exchange of fair value and good faith.[13] *See* NYDCL § 272(a); *Mendelsohn v. Jacobowitz (In re Jacobs)*,

---

[13] Courts have noted that "reasonably equivalent value" under § 548(a)(1)(B) and "fair consideration" under NYDCL § 273 have the same fundamental meaning, *Geltzer v. Xaverian High School* (*In re Akanmu*), 502 B.R.

12

394 B.R. 646, 669 (Bankr. E.D.N.Y. 2008).  Fair consideration is given so long as the consideration "is not 'disproportionately small' as compared to the value of the transferred property." *Sec. Inv'r Prot. Corp. v. Rossi (In re Cambridge Capital, LLC)*, 331 B.R. 47, 63 (Bankr. E.D.N.Y. 2005) (quoting *Lippe v. Bairnco Corp.*, 249 F. Supp. 2d 357, 377 (S.D.N.Y. 2003)).  As stated by the Second Circuit:

> '[T]he question of reasonably equivalent value is determined by the value of the consideration exchanged between the parties at the time of the conveyance or incurrence of debt which is challenged.'  In determining whether the value received by one party is so disproportionately small as to constitute a lack of fair consideration, the 'court need not strive for mathematical precision' but must 'keep the equitable purposes of the statute firmly in mind, recognizing that any significant disparity between the value received and the obligation assumed . . . will have significantly harmed the innocent creditors of that [party].'

*Liquidation Trust v. Daimler AG (In re Old Carco LLC)*, 509 Fed. App'x 77, 78 (2d Cir. 2013) (internal citations and quotations omitted).

Where "a transferee has given equivalent value in exchange for the debtor's property, the statutory requirement of 'good faith' is satisfied if the transferee acted without either actual or constructive knowledge of any fraudulent scheme." *HBE Leasing Corp.*, 48 F.3d at 636.  "'Good faith' in a constructive fraudulent conveyance claim is the good faith of the transferee." *Sharp*, 403 F.3d at 54, n.4.[14]

Within this legal framework, the Court now turns to plaintiff's theory of the case under NYDCL § 273.  To prevail on his constructive fraudulent conveyance claim, plaintiff

---

124, 130-31 (Bankr. E.D.N.Y. 2013) (citing *Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC)*, 458 B.R. 87, 110 (Bankr. S.D.N.Y. 2011)), and courts use the terms interchangeably, *see Geron v. Palladin Overseas Fund, Ltd. (In re AppliedTheory Corp.*, 323 B.R. 838, 840-41 (Bankr. S.D.N.Y. 2005).  The difference, however, is that NYDCL § 272 requires that "fair consideration" be given in good faith.  *See Nisselson v. Softbank AM Corp. (In re MarketXT Holdings Corp.)*, 361 B.R. 369, 398 (Bankr. S.D.N.Y. 2007).

[14] In his Amended Complaint, plaintiff did not allege any lack of good faith in connection with the challenged Transfers and, at trial, plaintiff did not argue or introduce evidence to show a lack of good faith on the part of defendant.

must establish that (1) debtor made the Transfers, (2) debtor was insolvent or was thereby rendered insolvent by the Transfers, and (3) the Transfers were made without fair consideration. No dispute exists as to the first and second elements—the trial record shows that the Transfers were made and the parties stipulated that debtor was insolvent at the time of the Transfers. It is the third element on which the parties strongly disagree. While plaintiff acknowledges that debtor received consideration for the Transfers in the form of services rendered, and has not contested the value of those services, he nevertheless argues that the services were provided by MMG and not by defendant, the recipient of the Transfers. Tr. 46:5-8, 57:19-25, 58:14-22. Plaintiff contends that payment should have been made to MMG, which according to plaintiff actually performed the services. In short, plaintiff asks: what did debtor receive from defendant in exchange for the Transfers? His answer: nothing. Defendant, however, takes a different view of the significance of what services were rendered and by whom. In the main, defendant argues that the Court must look to what a debtor-transferor received in exchange for the property conveyed. Defendant contends that debtor received an economic benefit from the services rendered, and that she did not benefit from the Transfers to the detriment of creditors of the estate.

Accordingly, the crux of this dispute is not whether debtor received consideration for the Transfers, but rather, who rendered the services for which debtor paid, and whether at the end of the day the net effect of the Transfers reduced the assets of the bankruptcy estate and lessened the funds available for distribution to unsecured creditors. For the reasons set forth below, plaintiff has failed to establish by a preponderance of the evidence that he is entitled to relief under his legal theory.

First, while plaintiff argues that MMG rendered services to debtor, and not defendant, the trial record shows that MMG is a sole proprietorship owned by defendant. Defendant's 2012 and 2013 federal tax returns each included Schedule C – Profit or Loss From Business

(Sole Proprietorship) and Schedule SE – Self-Employment Tax, and her 2012 and 2013 state tax return included a copy of Schedule C that was filed with defendant's federal tax returns [Exs. 21 and 22]. Defendant testified that Schedule C reflected profits and losses for MMG. Tr. 31:12-18. The Second Circuit has recognized that "a sole proprietorship has no legal existence apart from its owner." *Lattanzio v. COMTA*, 481 F.3d 137, 140 (2d Cir. 2007). "As a general matter, the income and expenses of a sole proprietorship are the income and expenses of [owner of the business]." *Stewart v. C.I.R.*, 84 T.C.M. (CCH) 175 (T.C. 2002) (citing 26 U.S.C. § 61(a)(2)). "[A] sole proprietorship, unlike [a] corporation, [is] not a separate taxable entity from [the individual] . . . ." *Id.* It is "a business in which one person owns all the assets, owes all the liabilities, and operates in his or her personal capacity." BLACK'S LAW DICTIONARY (10th ed. 2014).

Plaintiff has not argued or presented evidence to show that MMG is a separate legal entity from defendant. As noted above, the evidence introduced at trial demonstrated that MMG is a sole proprietorship owned by defendant. This evidence conflicts with plaintiff's theory of the case that debtor paid defendant for services provided, not by defendant, but MMG. Because MMG is a sole proprietorship, and therefore has no legal existence apart from defendant, its owner, payments made to defendant were in exchange for services she provided to debtor.[15]

As to the value of the consideration exchanged between debtor and defendant, plaintiff does not argue nor did he introduce evidence to show that the value of the merchant accounts generated by defendant for the benefit of debtor was not a "fair equivalent" for the Transfers.

---

[15] The Court notes that MMG is not seeking to be paid for the work plaintiff alleges MMG provided to debtor. MMG has not filed a proof of claim in this bankruptcy case. Additionally, no evidence was presented showing that debtor paid *both* defendant and MMG for the same services, thus diminishing debtor's estate.

Defendant testified that she received the Transfers, i.e., $41,544.63, for services she rendered to debtor. Tr. 55:11-56:2, 67:5-16. According to the unrefuted trial testimony of defendant, during 2012, she generated 1200 merchant accounts for debtor, Tr. 8:8-9, 43:14-16, which in turn generated in excess of $600,000 of income to debtor, Tr. 64:7-15, 65:12-13, and for which she did not receive any commissions, Tr. 66: 17-24. The Court carefully considered whether any basis for discrediting defendant's testimony existed but found none. Defendant testified consistently and credibly as to the Transfers and her work relationship with debtor.

Secondly, plaintiff failed to show how the challenged transaction diminished debtor's estate and adversely affected creditors. "[I]f the debtor receives property . . . that is substantially equivalent in value to the property given or obligation incurred by him in exchange, then the transaction has not significantly affected his estate and his creditors have no cause to complain." *Rubin v. Mfrs. Hanover Trust Co.*, 661 F.2d 979, 991 (2d Cir. 1981). "Whether a debtor received a reasonably equivalent value is analyzed from the point of view of the debtor's creditors, because the function of this element is to allow avoidance of only those transfers that result in a diminution of a debtor's prepetition assets." *Jordan v. Kroneberger (In re Jordan)*, 392 B.R. 428, 441 (Bankr. D. Idaho 2008); *see also Frontier Bank v. Brown (In re N. Merch., Inc.)*, 371 F.3d 1056, 1059 (9th Cir. 2004) ("the primary focus . . . is on the net effect of the transaction on the debtor's estate and the funds available to the unsecured creditors."). "The touchstone is whether the transaction conferred realizable commercial value on the debtor reasonably equivalent to the realizable commercial value of the assets transferred." *Mellon Bank, N.A. v. Metro Commc'ns, Inc.*, 945 F.2d 635, 647 (3d Cir. 1991).

Here, regardless of whether defendant or as plaintiff posits, MMG, provided services, debtor received "realizable commercial value" reasonably equivalent to the Transfers. As noted above, plaintiff does not dispute that new accounts for debtor were created through

services provided by defendant or as plaintiff argues, MMG. At the end of the day, debtor received the value of those accounts, and, thus, a "fair equivalent" for the payments it made to defendant for services rendered. Debtor's creditors suffered no adverse impact by the Transfers—the net effect of the transaction on debtor's estate and the funds available for debtor's unsecured creditors is null.

Lastly, because defendant gave equivalent value in exchange for the Transfers, and plaintiff did not argue or present evidence that defendant acted with actual or constructive knowledge of any fraudulent scheme, the requirement under NYDCL § 272 that defendant act in good faith has been satisfied. *See HBE Leasing Corp.*, 48 F.3d at 636.

Accordingly, based on all of the credible evidence at trial, the Court finds that plaintiff has failed to establish that the Transfers were made without a fair consideration. Plaintiff's claim that the Transfers may be avoided as constructively fraudulent under NYDCL § 273 therefore fails.

### C. Plaintiff's Actual Fraudulent Conveyance Claim

Plaintiff next challenges the Transfers as actually fraudulent under NYDCL § 276. Section 276 provides that "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." N.Y. DEBT. & CRED. § 276.

#### 1. Burden of Proof

To prevail on his claim of actual fraud, plaintiff must prove by clear and convincing evidence that the Transfers were made by debtor with actual intent to hinder, delay, or defraud. *United States v. McCombs*, 30 F.3d 310, 328 (2d Cir. 1994); *Mendelsohn v. Jacobowitz (In re Jacobs)*, 394 B.R. 646, 661 (Bankr. E.D.N.Y. 2008). Proof by clear and convincing evidence means that when all of the evidence is considered, the trier of fact is

17

convinced that it is highly probable that it is true. *See Colorado v. New Mexico*, 467 U.S. 310, 316 (1984).

2. Analysis

Under NYDCL § 276, it is the intent of the transferor, and not of the transferee, that is dispositive. *HBE Leasing Corp. v. Frank*, 61 F.3d 1054, 1059 n.5 (2d Cir. 1995). "'Where actual intent to defraud is proven, the conveyance will be set aside regardless of the adequacy of the consideration given.'" *Sharp*, 403 F.3d at 56 (quoting *United States v. McCombs*, 30 F.3d 301, 328 (2d Cir. 1994)).

Because actual intent is rarely shown by direct evidence, courts use "badges of fraud" to support an inference of an intent. *Sharp*, 403 F.3d at 56; *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 639 (2d Cir. 1995). These badges of fraud include:

(1) the lack of or inadequacy of consideration;
(2) the family, friendship or close associate relationship between the parties;
(3) the retention of possession, benefit or use of the property in question;
(4) the financial condition of the party sought to be charged both before and after the transaction in question;
(5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and
(6) the general chronology of the events and transactions under inquiry

*Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582-83 (2d Cir. 1983). A showing of multiple badges of fraud can establish clear and convincing evidence of actual intent. *Kramer v. Sooklall (In re Singh)*, 434 B.R. 298, 311-12 (Bankr. E.D.N.Y. 2010) (citation omitted).

While plaintiff asked in the Joint Pretrial Statement that judgment be entered in his favor under NYDCL § 276, at trial, he did not argue or present evidence of debtor's actual intent to hinder, delay, or defraud. Rather, as noted above, plaintiff placed primary emphasis on his constructive fraudulent conveyance claim under NYDCL § 273. Accordingly, based on the trial record, the Court concludes that plaintiff failed to carry his burden of proof that the

Transfers were made by debtor with actual intent to hinder, delay, or defraud, and finds for defendant on this cause of action.

### D. Plaintiff's Demand for Attorneys' Fees

Plaintiff has made a demand for attorneys' fees under NYDCL § 276-a. That section provides for recovery of attorneys' fees if a "conveyance is found to have been made by the debtor and received by the transferee with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud present or future creditors." N.Y. DEBT. & CRED. § 276-a. Under NYDCL § 276-a, plaintiff must establish actual intent by both the transferor and the transferee. *Gowan v. Patriot Group, LLC (In re Dreier LLP)*, 452 B.R. 391, 433 (Bankr. S.D.N.Y. 2011).

Because plaintiff did not put forth any evidence to show that defendant received the Transfers with actual intent, plaintiff is not entitled to recover attorneys' fees under NYDCL § 276-a.

### E. Plaintiff's Claim of Unjust Enrichment

#### 1. Burden of Proof

Plaintiff has the burden of proof to present evidence in support of his allegation that defendant was unjustly enriched and to prove that allegation by a preponderance of the evidence. *Marini v. Adamo*, 12 F. Supp. 3d 549, 552 (E.D.N.Y. 2014).

#### 2. Analysis

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish: (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (quoting *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000)); *Adamo*, 12 F. Supp. 3d at 552. "An indispensable ingredient of [an unjust enrichment] claim is that as between the two parties involved there must be an injustice."

*Songbird Jet Ltd., Inc. v. Amax Inc.*, 581 F. Supp. 912, 926 (S.D.N.Y. 1984) (citing *Indyk v. Habib Bank Ltd.*, 694 F.2d 54, 57 (2d Cir. 1982)). "The 'essence' of such a claim 'is that one party has received money or a benefit at the expense of another[,]'" *Kaye*, 202 F.3d at 616 (quotations and citation omitted), and "[t]he essential inquiry in any action for unjust enrichment . . . is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered[.]" *Paramount Film Distrib. Corp. v. State*, 30 N.Y.2d 415, 421, 334 N.Y.S.2d 388, 285 N.E.2d 695 (N.Y. 1972). "As long as the transferor received a benefit . . . the transferee is not liable on an unjust enrichment claim." *Geltzer*, 502 B.R. at 138.

Plaintiff has failed to meet his burden in proving his claim for unjust enrichment. For the same reasons that plaintiff's constructive fraud claim fails, the unjust enrichment claim fails. Because the payments to defendant were made for fair consideration, those payments were not made at the expense of debtor or its creditors.

Based on this evidence, the Court finds that defendant was not unjustly enriched at the debtor's expense. Accordingly, the Court finds for defendant with respect to plaintiff's claim for unjust enrichment.

IV. CONCLUSION

For the reasons stated above, the Court concludes that plaintiff has failed to meet his burden of proof on all of his claims, and finds in favor of defendant.

SO ORDERED.

Dated: March 26, 2018  
Central Islip, New York

*Louis A. Scarcella*  
**Louis A. Scarcella**  
**United States Bankruptcy Judge**